# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

LISA NIDIFFER JENNINGS,

      Plaintiff,

v.

UNIVERSAL PROTECTION SERVICE, LLC
d/b/a ALLIED UNIVERSAL SECURITY
SERVICES,

      Defendant.

Civil Action No. 2:24-cv-205

## DECLARATION OF LISA JENNINGS

I, Lisa Jennings, declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. My name is Lisa Jennings. I am the plaintiff in this lawsuit. I am over 18 years of age, competent to testify, and have personal knowledge of the facts set forth in this declaration.

2. In June 2019, I was hired as a Security Supervisor by Vinson Guard Service and assigned to work at the Koch Foods Debone Facility in Morristown, Tennessee. My immediate supervisor was Don Yordy.

3. In the fall of 2019, I learned that Allied Universal Security was acquiring Vinson Guard and that Vinson employees would become employees of Allied while continuing to perform the same security services under the contract with Koch Foods.

4. By this time, I had already filed a charge of discrimination against my employer after

learning from a male coworker that Mr. Yordy was trying to find reasons to fire me because I am female so that he could replace me with a male supervisor.

5. Mr. Yordy told me that to transition to being an employee of Allied, I would need to attend a meeting in Knoxville with Allied personnel. Mr. Yordy made it clear to me that the meeting was mandatory if I wanted to keep my job.

6. I understood that I was to attend the meeting in uniform and bring a voided check and my guard license. The meeting was scheduled for after work hours from 6-8 p.m. in West Knoxville, which was about a one-hour drive away.

7. Allied gave us no documents to review before the meeting, nor was I given online access to review information before the meeting.

8. On the night of the meeting, I drove with another Vinson Guard employee, Faith Evans, from Morristown to Knoxville.

9. Ms. Evans and I were the only Vinson employees from the Morristown location who were required to attend this meeting. We are also the only female employees at that location. The four or five male security guards who worked with us in Morristown became Allied employees without attending this meeting.

10. I believe the meeting lasted less than two hours, and then Ms. Evans and I drove back to Morristown that night.

11. Most of the time at the meeting was spent listening to Allied employees give presentations about Allied. We spent a relatively short amount of time on computers scrolling through materials and entering some basic information.

12. The laptop computers belonged to Allied and remained with Allied when we left.

13. I deny that we created unique username and password credentials to access information

on the computer.

14. I deny that I saw, read, or signed an arbitration agreement on the computer.

15. Although the Allied employees guided us through some of the material as a group, I deny that any of the Allied employees mentioned an arbitration agreement.

16. I have recently seen the arbitration agreement that Allied claims that I signed at this meeting. Even after seeing it, this agreement is unfamiliar to me, and I deny that I reviewed it at the onboarding meeting.

17. I believe I would have remembered seeing this arbitration agreement if I had reviewed it because I know that I would have chosen to opt out of the agreement.

18. Allied personnel did not give us copies of anything that we reviewed to take with us when we left the meeting. I do not believe that Allied had any printers at the meeting to make copies, even if we asked for them, and in any event, no copies were made.

19. We had no way to download or save any material that we reviewed because the computers did not belong to us.

20. We were not given access to the Emtech system or an online account where we could review the onboarding documents later.

21. To my knowledge, eHub contained only pay and benefits information. I believe that some employees at other Allied locations could also view schedules or available shifts on eHub. I deny that eHub contained the arbitration agreement or other documents from the onboarding process.

22. Even if I had seen the arbitration agreement at the onboarding meeting, I could not have opted out at the meeting because the agreement requires employees to sign it but does not seem to allow them to opt out at the same time.

23. Instead, the agreement clearly states that the 30-day deadline to opt out starts when the employee *receives* the binding agreement. To me, "receiving" the agreement is not the same thing as "reviewing" it under duress of time and threat of job termination.

24. I never received the agreement because Allied did not give me a copy, nor did I receive access to an online version of the agreement.

25. I understand the agreement to state that the 30-day deadline to opt out is triggered when the employee receives the signed arbitration agreement. Even if I had signed it, I could not have opted out of the agreement after the meeting unless I had received a copy giving me the ability to reference the lengthy, detailed instructions explaining how to opt out.

26. If I had reviewed the agreement at the meeting, which I did not, I would have expected to receive a copy of it. Had I received a copy, or access to, the agreement, then I would have known to follow the instructions to opt out within 30 days from that point.

27. Allied's approach to onboarding employees made it impossible for anyone, including me, to read every page of the material presented. It was an overwhelming amount of information containing complicated legal documents that we were required to sign or lose our jobs. Allied's Exhibit C alone consists of 55 pages and references hundreds of additional pages of material.

28. For Allied to hold this meeting in the evening, require us to drive an hour each way, cram in presentations during the limited time, and then expect us to race through and sign voluminous, dense documents under threat of termination before we could leave to drive home at night made it impossible for me to adequately read, let alone understand, much of the information presented.

29. After we finished with the computers, I believe we left them turned on. I do not believe

that I logged out because I had not logged in with a password or unique credentials, and I had no personal account or access to this system or documents after leaving the meeting.

30. Attached to this declaration is a partially completed job application form that Allied recently provided to my attorney along with the arbitration agreement and some onboarding documents. Although the job application has my name on it, I am certain that I did not enter the information on the application. The information entered is incorrect, and I believe that someone at Allied must have entered the information on this job application on my behalf because I did not do it.

Pursuant to 28 U.S.C. §1746, I, declare under penalty of perjury that the foregoing declaration is true and correct.

Date 5/16/25

Lisa Nidiffer Jennings

## Nidiffer Jennings, Lisa



| | |
|---|---|
| Name: | Nidiffer Jennings, Lisa |
| Current Address: | , |
| E-Mail: | lisa.nidiffer jennings@emptech.com |
| SSN - Last 4: | 8713 |

| | |
|---|---|
| Phone: | |
| Cell: | |

## E-Sign Acknowledgement

| | |
|---|---|
| Agreement Status: | Incomplete |
| IP Address: | |
| IP Location: | |
| Signature: | |
| Full Name: | |
| Date: | |

## Position Applied For

| | |
|---|---|
| Name of Facility: | Corp (CA) Irvine |
| City: | Irvine |
| State: | CA |
| Type of Position: | Guard Services |
| Job Title: | TN - Security Professional |
| Category: | Security Professionals |

## Additional Information

**Employment Status**

| | |
|---|---|
| Are you employed now? | No |
| Are you over 18? | No |
| Authorized to work? | No |
| Able to work a flex schedule? | No |

**Misc. Details**

| | |
|---|---|
| Ever been bonded/insured in prior employment? | No |
| Bonded Details: | |
| Ever been terminated or asked to resign? | No |
| Termination Details: | |

**Prior Employment**

| | |
|---|---|
| Have you applied for work here before? | N/A |
| Applied on Date: | |
| Position applied for: | |
| Ever been employed by our organization? | No |
| Location worked at? | |
| Position held? | |
| Period of employment? | |
| Do you know anyone at this organization? | No |
| What is their name? | |

## Education

| Institution Name | Years Completed | Degree | Major | City | Currently Attending |
|---|---|---|---|---|---|

Case 2:24-cv-00205-DCLC-CRW    Document 20-1    Filed 05/17/25    Page 7 of 8
PageID #: 283

Nidiffer Jennings, Lisa



## Work History

| Institution Name | Address | Job Title | Started | Ended | Reason For Leaving |
|---|---|---|---|---|---|
| | | | | | |

## References

| Name | Occupation | Phone | Duration |
|---|---|---|---|
| | | | |

## Acknowledgements

Case 2:24-cv-00205-DCLC-CRW    Document 20-1    Filed 05/17/25    Page 8 of 8    PageID #: 284