# EXHIBIT 2

Case 2:24-cv-00205-DCLC-CRW    Document 20-2    Filed 05/17/25    Page 1 of 5
PageID #: 285

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

LISA NIDIFFER JENNINGS,

      Plaintiff,

v.

UNIVERSAL PROTECTION SERVICE, LLC
d/b/a ALLIED UNIVERSAL SECURITY
SERVICES,

      Defendant.

Civil Action No. 2:24-cv-205

## DECLARATION OF FAITH EVANS

I, Faith Evans, declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. My name is Faith Evans. I am over the age of 18 and competent to testify. I have personal knowledge of the facts set forth in this declaration.

2. I am familiar with the Plaintiff in this lawsuit, Lisa Jennings, because she was my supervisor when we were employed by Vinson Guard and then Allied Universal Security after Allied acquired Vinson Guard.

3. During the time that Ms. Jennings was my supervisor, I worked as a security guard in Morristown, Tennessee, performing security services for Koch Foods.

4. In the Fall of 2019, while still employed as a security guard for Vinson Guard, I was told by a Vinson manager named Don Yordy that Vinson was selling out to Allied Universal Security and that Vinson employees would become employees of Allied and continue

performing the same security work for Koch Foods.

5. I do not remember the exact date in the Fall of 2019 that I transitioned to becoming an employee of Allied, but I do remember aspects of the onboarding process with Allied.

6. I remember that manager Don Yordy instructed me and Ms. Jennings to attend a mandatory meeting in Knoxville with Allied personnel if we wanted to continue performing security services at Koch Foods in Morristown.

7. One of the reasons I remember this day is because I was angry that I was given short notice about this onboarding meeting in Knoxville, which was about a one-hour drive from our work location in Morristown, Tennessee. I believe notice was given to me less than one day in advance of this meeting. I was required to work a full day, then travel for an hour to Knoxville after work to attend the meeting and then travel back to Morristown later that night.

8. I remember questioning whether the meeting was mandatory or if there was some flexibility in attending the onboarding process at another more convenient time or location. Don Yordy told me that if I wanted to keep my job then I was required to attend the meeting in Knoxville after work.

9. My supervisor, Ms. Jennings, and I were the only two female employees working for Vinson Guard at that time. Ms. Jennings and I were also the only two employees from the Morristown area who were required to attend Allied's onboarding meeting in Knoxville that night.

10. Ms. Jennings and I worked with about four or five male security guards at the Koch Foods location but none of them were required to attend the meeting that night, even though manager Don Yordy instructed me and Ms. Jennings that the meeting was

mandatory if we wanted to keep our jobs. I believe the male security guards ultimately went through some type of onboarding process, but they did not attend the meeting that Ms. Jennings and I were required to attend.

11. Ms. Jennings and I drove together to Allied's onboarding meeting in Knoxville. We attended the meeting together, which lasted about an hour, and then we drove back to Morristown that night.

12. At the meeting, Allied employees gave presentations about working for Allied. Most of the meeting time was spent listening to Allied employees talk about Allied and employment with Allied. At some point, we were instructed to review material on the computers that were set up and ready for us to use. The Allied employees walked us through the material as a group with a few other onboarding employees.

13. We used the computers to scroll through information, and we input some basic information about ourselves, but I do not think we were required to create accounts or specific usernames or passwords.

14. I deny that we were shown an arbitration agreement on the computer. I do not remember seeing an arbitration agreement. I believe I would have remembered it if I had seen it because I have some familiarity with arbitration agreements.

15. Before agreeing to give this declaration, I reviewed the arbitration agreement that Allied has stated was signed by Ms. Jennings. It is unfamiliar to me. I believe that if I had reviewed the agreement at the meeting, I would have taken the steps described to opt out of the agreement.

16. We were not given copies of documents we reviewed to take with us when we left. Without having a copy of the arbitration agreement, we would not have the instructions



for how to opt out of the agreement. I do not recall having an account or access to view any documents shown to us at the onboarding meeting.

17. When we finished scrolling through the documents at the meeting, we left the computers turned on. I do not believe that we signed out or shut down the computers.

18. Even though Ms. Jennings and I drove home together and talked about the meeting, we did not discuss an arbitration agreement because I do not believe we reviewed one.

Pursuant to 28 U.S.C. §1746, I, declare under penalty of perjury that the foregoing declaration is true and correct.

Date 5/14/25

Faith Evans