UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| LISA NIDIFFER JENNINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:24-CV-00205-DCLC-CRW |
| v. | ) | |
| | ) | |
| UNIVERSAL PROTECTION SERVICE, | ) | |
| LLC d/b/a ALLIED UNIVERSAL | ) | |
| SECURITY SERVICES, | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Compel Arbitration and Stay Action. [Doc. 15].

Defendant Universal Protection Service, LLC d/b/a Allied Universal Security Services ("Allied")

asserts Plaintiff Lisa Nidiffer Jennings cannot bring her claims in this Court because she signed a

valid and binding arbitration agreement as part of her onboarding paperwork when she accepted

employment with Allied. Jennings responded asserting there is no valid or enforceable arbitration

agreement [Doc. 20][1] to which Allied replied [Doc. 21]. For the reasons below, Allied's motion

to compel arbitration [Doc. 15] is **HELD IN ABEYANCE**. Allied's Motion to Stay Deadlines

Pending the Court's Ruling on Defendant's Motion to Compel Arbitration [Doc. 29] is

**GRANTED**.

## I.    BACKGROUND

Jennings was hired by Vinson Guard Service ("Vinson") to work as a Security Supervisor

---

[1]    In its reply, Allied argues that the Court should decline to consider Jennings's response because it was filed one day late. [Doc. 21, pg. 2]. The Court declines to exercise its discretion to strike Jennings's response in this instance given it was only a minor delay and will consider it timely filed.

at the Koch Foods Debone Facility in Morristown, Tennessee in June 2019. [Doc. 1, ¶ 13]. In the fall of 2019, Allied acquired Vinson and transitioned some of Vinson's employees – including Jennings – to Allied while continuing to provide the same security services at the Koch Foods facility. *Id.* ¶¶ 39–42.

Jennings asserts that around the time of Allied's acquisition she had already contacted the Tennessee Human Rights Commission and Equal Employment Opportunity Commission and filed a charge of discrimination against her employer. *See* [Doc. 1, ¶¶ 38, 43; Doc. 20, pg. 2; Doc. 20-1, ¶¶ 1–4]. Jennings alleges that the discriminatory conduct continued during her employment with Allied. [Doc. 1, ¶¶ 46–47]. She further alleges that in the fall of 2022, Allied caused her to lose her job when the new security contractor replacing Allied at the Koch Foods facility, Wiser Security Services, declined to hire her in the transition. *Id.* ¶¶ 47–66.

Jennings filed this action on November 11, 2024, asserting claims against Allied under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), and the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C §§ 621 *et seq*. [Doc. 1, ¶¶ 74–85]. She alleges age and gender-based harassment and discrimination, hostile work environment, and retaliation. *Id.*

Allied then moved to compel arbitration. [Doc. 15]. Allied asserts that after it acquired Vinson and onboarded former Vinson employees, Jennings electronically signed an "Arbitration Policy and Agreement" (the "Agreement") as part of her digital onboarding process. [Doc. 17, pgs. 2–4]. The Agreement states, in relevant part:

> To the fullest extent authorized by law, the Parties mutually agree to the resolution by binding arbitration of all claims or causes of action that the Employee may have against the Company, or the Company against the Employee, which could be brought in a court of law, unless otherwise set forth in this Agreement. Examples of claims covered by this Arbitration Policy and Agreement specifically include, but are not limited to, claims for breach of any contract (written or oral, express or

2

implied); fraud, misrepresentation, defamation, or any other tort claims; claims for discrimination and/or harassment; claims for wrongful termination; claims relating to any offers, promotions, or transfers made by the Company; claims for retaliation; claims for non-ERISA-covered benefits (such as vacation, bonuses, etc.);claims for wages or other compensation, penalties or reimbursement of expenses; breaks and rest period claims; claims relating to background checks; and claims for violation of any law, statute, regulation, ordinance or common law, including, but not limited to, all claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967; the Older Workers' Benefit Protection Act of 1990; the Americans with Disabilities Act; the Family and Medical Leave Act; the Consolidated Omnibus Budget Reconciliation Act of 1985; the Fair Labor Standards Act; and any other applicable federal, state, or local laws relating to discrimination in employment, leave, and/or wage and hour laws, whether currently in force or enacted hereafter.

[Doc. 17-1, pgs. 22–23].

Allied contends that Jennings signed this Agreement electronically on November 6, 2019, the same day she completed other onboarding documents, including forms relating to emergency contact information and her military and disability status. [Doc. 17, pg. 2; Doc. 17-1, pgs. 29–85]. The Agreement included an acknowledgment that the employee had read the document, had an opportunity to ask questions, and understood its terms. [Doc. 17-1, pg. 27]. The Agreement also included an opt-out provision allowing an employee to decline arbitration by providing written notice within thirty days of signing. *Id.* at 22.

Allied included a declaration from Amy Reinhold, its Human Resources Director for the Southeast Region in support of its motion. [Doc. 17-1, pg. 2]. Reinhold details Allied's digital onboarding process for all employees transitioning through acquisitions. *Id.* According to Reinhold, employees access onboarding materials through the Emptech portal using individualized login credentials. *Id.* at 2–3. Reinhold further states that the arbitration agreement appears within the onboarding portal and must be accessed before an employee can complete the electronic signature step. *Id.* at 11, 16. According to Reinhold, the system requires employees to open and scroll through the document before the signature field becomes available. *Id.*

In response, Jennings disputes Allied's account of the onboarding process and denies ever seeing, reading, or signing the Agreement. [Doc. 20-1, ¶ 14]. She states that she was required to attend an onboarding meeting with Allied on November 6, 2019. *Id.* ¶¶ 6, 11. According to Jennings, employees were not provided any documents prior to the meeting and instead spent a short amount of time after the presentation on Allied's laptop computers to "scroll[] through materials and enter[] some basic information." *Id.* ¶¶ 7, 11. Jennings denies that she was required to create unique credentials to log onto the laptop and states that she was not given access to an online account where she could review any documents later. *Id.* ¶¶ 13, 18–21. She asserts that if she had seen the Agreement, she would have exercised the opt-out provision within thirty days. *Id.* ¶¶ 17, 26.

The parties therefore dispute whether Jennings assented to the Agreement during Allied's electronic onboarding process. Allied contends that Jennings reviewed and electronically signed the Agreement through the Emptech portal as part of the required onboarding tasks. Jennings denies that she saw or signed the Agreement and contends that the onboarding session consisted only of briefly entering information on company laptops without creating login credentials or accessing a personal account. The Court must now determine whether a valid agreement to arbitrate was formed.

## II.  LEGAL STANDARD

Where a party seeks to compel arbitration, a court must begin its analysis by looking to the procedures set forth in the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq.* The FAA provides that a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court determines

that the parties entered into a valid agreement to arbitrate and the dispute falls within the scope of that agreement, the court must compel arbitration and stay proceedings pending arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4).

When the existence of an arbitration agreement is disputed, the FAA limits the court's authority to compel arbitration. *See Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 835 (6th Cir. 2021) (citing 9 U.S.C. § 4). Under § 4, a court may compel arbitration only if the existence of the arbitration agreement is not "in issue." *Id.*

To decide whether the existence of an agreement to arbitrate is "in issue," courts use the summary judgment standard. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021). The party asserting the existence of a contract must first produce evidence that would support a reasonable jury's finding that a contract was formed. *See id.* The party contesting the existence of a contract must then present specific facts that would allow a reasonable jury to conclude that no contract was formed. *See Boykin*, 3 F.4th at 839.

In accordance with the summary judgment standard, the court views "all facts and inferences drawn therefrom in the light most favorable" to the party opposing arbitration and "determine[s] whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted).

## III. ANALYSIS

The central question before the Court is whether Jennings has placed the existence of an arbitration agreement "in issue" under the summary judgment standard that governs motions to

compel arbitration. *See Boykin*, 3 F.4th at 839. When the formation of an arbitration agreement is disputed, courts apply a standard similar to that used for summary judgment. *Id.* at 838. If the party opposing arbitration presents admissible evidence creating a genuine dispute of material fact as to the making of the agreement, the FAA requires the court to proceed summarily to a trial on that issue. *Id.* at 839–40; 9 U.S.C. § 4.

The parties do not dispute that Tennessee law governs the contract formation issue or that Tennessee law permits the use of electronic signatures. *See* Tenn. Code Ann. § 47-10-107(a) ("[A] record or signature may not be denied legal effect or enforceability solely because it is in electronic form."). Under Tennessee law, a valid contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Doe v. HCA Health Servs. of Tenn., Inc.,* 46 S.W.3d 191, 196 (Tenn. 2001).

## A.      Allied's Evidence

Allied bears the initial burden of producing evidence from which a reasonable jury could conclude that an agreement to arbitrate exists. *See In re StockX*, 9 F.4th at 881. Allied has met this burden. Allied provided a copy of the Agreement bearing Jennings's electronic signature dated November 6, 2019. [Doc. 17-1, pg. 27]. The document reflects the same IP address (10.113.3.136) and date as Jennings's other electronically signed onboarding documents, including forms requiring her to enter her personal information such as emergency contacts and military and disability status. *See id.* at 29–85. Allied also included a declaration from its Human Resources Director, Amy Reinhold, detailing the onboarding process used for employees transitioning through corporate acquisitions. *Id.* at 2–3. She states that employees access onboarding materials

through the Emptech portal and must open and scroll through documents before the electronic signature field becomes available. *Id.* at 11, 16.

## C. Jennings's Evidence

Because Allied has met its initial burden, the burden shifts to Jennings to establish a genuine dispute of material fact regarding whether she accepted the arbitration agreement. *See Boykin*, 3 F.4th at 839; Fed. R. Civ. P. 56(a). Jennings denies that she ever saw or signed the Agreement. *See* [Doc. 20-1, ¶¶ 14–16]. She provides testimony from her coworker, Faith Evans, who attended the same onboarding meeting and corroborates Jennings's account of the process. *See* [Doc. 20-2, ¶¶ 11–17]. The Sixth Circuit has explained that while "[c]onvenient memory lapses do not create factual disputes that are genuine," "an unequivocal denial that takes the form of admissible evidence can create a genuine dispute of fact." *Boykin*, 3 F.4th at 839–40 (citations and internal quotation marks omitted). Jennings outright denies signing the Agreement not that she just does not recall the Agreement.

This case is similar to the facts of *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795 (6th Cir. 2023). In that case, the employer produced an electronic record showing that the plaintiff had signed the arbitration agreement with a company issued user ID. *Id.* at 798. In response, the plaintiff submitted a "sworn declaration in which he repeatedly said that he never saw the arbitration agreement." *Id.* The Sixth Circuit held that it could "see no reason whatever that would prevent a reasonable factfinder from believing [the plaintiff's] testimony—which means that his testimony created a genuine issue of material fact." *Id.*

Jennings offers similar testimony here. She provides a sworn declaration denying that she ever saw the arbitration agreement and would have exercised the opt-out provision had she been aware of it. At this stage, the Court does not weigh the credibility of competing evidence but

7

instead determines whether a reasonable factfinder could credit Jennings's testimony. *See Boykin*, 3 F.4th at 840. Because Jennings's denial is unequivocal and supported by admissible evidence, a reasonable factfinder could conclude that she did not assent to the arbitration agreement. Under the summary-judgment standard governing motions to compel arbitration, that testimony is sufficient to place the making of the arbitration agreement "in issue." *Bazemore*, 74 F.4th at 798.

Jennings also challenges the reliability of the entire onboarding system as put forth by Allied. Reinhold states that employees access the Emptech system using unique login credentials. [Doc. 17-1, pgs. 2–3]. Jennings raises however that, based on Reinhold's declaration, these credentials appear to consist of the employee's last name and either a Social Security number or an employee identification number. *See id.*; [Doc. 20, pg. 5]. Jennings contends that she was never instructed to create a personal password and that these credentials would have been readily accessible to other Allied employees with access to personnel files. [Doc. 20, pg. 5; Doc. 20-1, ¶¶ 13, 29–30]. Jennings further asserts that the computers used during the onboarding session remained turned on after employees completed the process and that she was not provided with access to the Emptech portal after the meeting. [Doc. 20-1, ¶¶ 18–21, 24, 29].

The Court does not resolve credibility disputes at this stage. Because Jennings has produced evidence creating a genuine dispute of material fact regarding whether she assented to the Agreement, the Court cannot compel arbitration at this stage. Although Allied has presented significant evidence supporting the validity of the Agreement, the Court must view the evidence in the light most favorable to Jennings. When the existence of an arbitration agreement is genuinely disputed, the FAA requires the court to "proceed summarily to the trial" of that issue. 9 U.S.C. § 4; *Boykin*, 3 F.4th at 844.

## IV.  CONCLUSION

For the foregoing reasons, Allied's Motion to Compel Arbitration is **HELD IN ABEYANCE**. and the Court will conduct a trial pursuant to 9 U.S.C. § 4.  This trial will be limited to the issue of contract formation and whether Jennings assented to the Arbitration Policy and Agreement in November 2019.  Accordingly, Allied's Motion to Stay Deadlines Pending the Court's Ruling on Defendant's Motion to Compel Arbitration [Doc. 29] is **GRANTED**.

The parties shall file a Notice on or before **March 20, 2026**, addressing: (1) whether Jennings has preserved any right to a jury trial, rather than a bench trial, on the issue of contract formation;[2]  (2) whether either party believes targeted discovery is necessary before that trial;[3] and (3) the parties' availability for a trial in April or May 2026.

The Court will conduct a scheduling conference on **March 26, 2026, at 1:00 p.m. EST** to address these matters and to set deadlines for any limited discovery and the trial on arbitrability. The parties shall call the Court's conference line at 423-212-5515 and enter access code 8036938 at the appointed time.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge

---

[2]  *See Boykin*, 3 F.4th at 844.
[3]  "[A]ny discovery must comport with § 4, which 'calls for a summary trial—not death by discovery.'"  *Boykin*, 3 F.4th at 844 (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)).

9